## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **E'LISE Z. HENSLEY and TWANA S. MITCHELL,**<br><br>        **Plaintiffs,**<br><br>    **v.**<br><br>**S.G.T., INC., d/b/a Pleasers, a Georgia corporation; DARIUS MITCHELL; M.P. "TREY" HICKS, III; SANDRA HICKS; JOHN DOE #1 known as "Jason"; and JOHN DOE #2 known as "Johnny",**<br><br>        **Defendants.** | Civil Action No. |

## **COMPLAINT**

E'lise Z. Hensley ("Ms. Hensley") and Twana S. Mitchell ("Ms. Mitchell") (collectively "Plaintiffs"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 7, bring this Complaint against S.G.T. Inc. d/b/a Pleasers ("S.G.T."), Darius Mitchell ("Mr. Mitchell"), M.P. "Trey" Hicks, III ("Mr. Hicks"), and Sandra Hicks ("Ms. Hicks") (collectively "Defendants"), and show the Court as follows:

## JURISDICTION AND VENUE

### 1.

Plaintiffs bring this action under the Fair Labor Standards Act of 1938 (as amended) (29 U.S.C. § 201 *et seq*., ("the FLSA") to recover due but unpaid minimum and overtime wages, and an additional like amount as liquidated damages, and to be reimbursed for their costs of litigation, including reasonable attorney's fees.

### 2.

Plaintiffs also seek to recover monies that Defendants forced them to pay Defendants and their employees in the form of "fees" and "fines," as well as monies that Defendants forced them to pay into an illegal mandatory tip pool in violation of the minimum wage provisions of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq*.).

### 3.

A related case, *Cook et al. v. Mitchell et al.*, Case No. 1:13-cv-03518-RWS (N.D. Ga. 2013), is pending before the United States District Court for the Northern District of Georgia.

## JURISDICTION AND VENUE

4.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA § 16(b), 29 U.S.C. § 216(b), 28 U.S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

5.

Venue properly lies in the Northern District of Georgia, Atlanta Division, under 28 U.S.C. § 1391 because Defendants conduct business in this judicial district; and all events giving rise to the claims herein occurred in this judicial district.

## THE PARTIES

6.

Ms. Hensley is an individual residing in Fulton County, Georgia.

7.

Ms. Mitchell is an individual residing in Cobb County, Georgia.

8.

S.G.T. is a corporation organized under the laws of the State of Georgia.

9.

S.G.T. can be served with process through its registered agent, Sandra Hicks, at 205 West Pike Street, Suite 120, Lawrenceville, Georgia 30046.

10.

S.G.T. is subject to the personal jurisdiction of this Court.

11.

Mr. Mitchell is a resident of Fulton County, Georgia.

12.

Mr. Mitchell can be served with process at his residence at 849 Cleveland Avenue, S.W., Atlanta, Georgia 30315, or wherever he may be found.

13.

Mr. Mitchell is subject to the personal jurisdiction of this Court.

14.

Ms. Hicks is a resident of Gwinnett County, Georgia.

15.

Ms. Hicks can be served with process at 205 West Pike Street, Suite 120, Lawrenceville, Georgia 30046, or wherever she may be found.

16.

Ms. Hicks is subject to the personal jurisdiction of this Court.

17.

Mr. Hicks is a resident of Gwinnett County, Georgia.

18.

Mr. Hicks can be served with process at 205 West Pike Street, Suite 120, Lawrenceville, Georgia 30046, or wherever he may be found.

19.

Mr. Hicks is subject to the personal jurisdiction of this Court.

20.

John Doe #1 ("John Doe #1") is a manager of "Pleasers" night club ("the Club") located at 849 Cleveland Ave., SW, Atlanta, Georgia 30316.

21.

John Doe #1 is known to Plaintiffs as "Jason".

22.

John Doe #1 holds himself out to Plaintiffs as an owner of the Club.

23.

On information and belief, John Doe #1 is a resident of the State of Georgia.

24.

John Doe #1 is subject to the personal jurisdiction of this Court.

25.

John Doe #2 ("John Doe #2") is a manager of the Club.

26.

John Doe #2 is known to Plaintiffs as "Johnny".

27.

On information and belief, John Doe #2 is a resident of the State of Georgia.

28.

John Doe #2 is subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

29.

The Club is an adult entertainment establishment located at 849 Cleveland Ave., SW, Atlanta, Georgia 30316.

30.

S.G.T. is the owner and operator of the Club.

31.

The Club's primary business is to provide entertainment in the form of nude and semi-nude dancers and the sale of alcoholic beverages.

32.

S.G.T. employed Ms. Hensley as a dancer at the Club from June 2011 through late-August 2014.

33.

At all times material hereto, S.G.T. has been an "employer" of Ms. Hensley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

34.

At all times material hereto, Ms. Hensley has been an "employee" of S.G.T. as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

35.

S.G.T. employed Ms. Mitchell as a dancer at the Club November 2009 through late-August 2014.

36.

At all times material hereto, S.G.T. has been an "employer" of Ms. Mitchell as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

37.

At all times material hereto, Ms. Mitchell has been an "employee" of S.G.T. as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

38.

At all times material hereto, Mr. Mitchell exercised operational control over the work activities of Plaintiffs.

39.

At all times material hereto, Mr. Mitchell participated in management of the day-to-day operations of the Club.

40.

At all times material hereto, S.G.T. vested Mr. Mitchell with supervisory authority over Plaintiffs.

41.

At all times material hereto, Mr. Mitchell exercised supervisory authority over Plaintiffs.

42.

At all times material hereto, Mr. Mitchell regularly conveyed communications from the Club's management regarding the day-to-day operation of the Club to Plaintiffs.

43.

At all times material hereto, Mr. Mitchell exercised authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

44.

At all times material hereto, Mr. Mitchell exercised authority over the terms of Plaintiffs' compensation, including the requirement that Plaintiffs "tip out" or pay fees to various other employees of the Club.

45.

At all times material hereto, Mr. Mitchell has been an "employer" of Ms. Hensley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

46.

At all times material hereto, Mr. Mitchell has been an "employer" of Ms. Mitchell as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

47.

At all times material hereto, Mr. Hicks exercised operational control over the work activities of Plaintiffs.

48.

At all times material hereto, Mr. Hicks participated in management of the day-to-day operations of the Club.

49.

At all times material hereto, S.G.T. vested Mr. Hicks with supervisory authority over Plaintiffs.

50.

At all times material hereto, Mr. Hicks exercised supervisory authority over Plaintiffs.

51.

At all times material hereto, Mr. Hicks regularly conveyed communications from the Club's management regarding the day-to-day operation of the Club to Plaintiffs.

52.

At all times material hereto, Mr. Hicks exercised authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

53.

At all times material hereto, Mr. Hicks exercised authority over the terms of Plaintiffs' compensation, including the requirement that Plaintiffs "tip out" or pay fees to various other employees of the Club.

54.

At all times material hereto, Mr. Hicks has been an "employer" of Ms. Hensley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

55.

At all times material hereto, Mr. Hicks has been an "employer" of Ms. Mitchell as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

56.

At all times material hereto, Ms. Hicks exercised operational control over the work activities of Plaintiffs.

57.

At all times material hereto, Ms. Hicks participated in management of the day-to-day operations of Club.

58.

At all times material hereto, S.G.T. vested Ms. Hicks with supervisory authority over Plaintiffs.

59.

At all times material hereto, Ms. Hicks exercised supervisory authority over Plaintiffs.

60.

At all times material hereto, Ms. Hicks regularly conveyed communications from the Club's management regarding the day-to-day operation of the Club to Plaintiffs.

61.

At all times material hereto, Ms. Hicks exercised authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

62.

At all times material hereto, Ms. Hicks exercised authority over the terms of Plaintiffs' compensation, including the requirement that Plaintiffs "tip out" or pay fees to various other employees of the Club.

63.

At all times material hereto, Ms. Hicks has been an "employer" of Ms. Hensley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

64.

At all times material hereto, Ms. Hicks has been an "employer" of Ms. Mitchell as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

65.

At all times material hereto, John Doe #1 exercised operational control over the work activities of Plaintiffs.

66.

At all times material hereto, John Doe #1 participated in management of the day-to-day operations.

67.

At all times material hereto, S.G.T. vested John Doe #1 with supervisory authority over Plaintiffs.

68.

At all times material hereto, John Doe #1 exercised supervisory authority over Plaintiffs.

69.

At all times material hereto, John Doe #1 regularly conveyed communications from the Club's management regarding the day-to-day operation of the Club to Plaintiffs.

70.

At all times material hereto, John Doe #1 exercised authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

71.

At all times material hereto, John Doe #1 exercised authority over the terms of Plaintiffs' compensation, including the requirement that Plaintiffs "tip out" or pay fees to various other employees of the Club.

72.

At all times material hereto, John Doe #1 has been an "employer" of Ms. Hensley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

73.

At all times material hereto, John Doe #1 has been an "employer" of Ms. Mitchell as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

74.

At all times material hereto, John Doe #2 exercised operational control over the work activities of Plaintiffs.

75.

At all times material hereto, John Doe #2 participated in management of the day-to-day operations.

76.

At all times material hereto, S.G.T. vested John Doe #2 with supervisory authority over Plaintiffs.

77.

At all times material hereto, John Doe #2 exercised supervisory authority over Plaintiffs.

78.

At all times material hereto, John Doe #2 regularly conveyed communications from the Club's management regarding the day-to-day operation of the Club to Plaintiffs.

79.

At all times material hereto, John Doe #2 exercised authority over the terms of Plaintiffs' working conditions, including all applicable rules for the Club's dancers.

80.

At all times material hereto, John Doe #2 exercised authority over the terms of Plaintiffs' compensation, including the requirement that Plaintiffs "tip out" or pay fees to various other employees of the Club.

81.

At all times material hereto, John Doe #2 has been an "employer" of Ms. Hensley as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

82.

At all times material hereto, John Doe #2 has been an "employer" of Ms. Mitchell as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

83.

At all times material hereto, two or more employees of S.G.T., including Plaintiffs, used or handled items that moved in interstate commerce that are necessary for performing its commercial purpose.

84.

Such items include wine, beer, liquor and other alcoholic products; food and food service items; computers; office furniture and office supplies.

85.

Throughout 2011, S.G.T. had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

86.

Throughout 2011, S.G.T. had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

87.

Throughout 2011, S.G.T. had two or more employees who regularly processed credit card transactions involving financial institutions located in states other than the State of Georgia.

88.

Throughout 2011, S.G.T. had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

89.

During 2011, S.G.T. had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

90.

During 2011, S.G.T. had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

91.

During 2011, S.G.T. had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

92.

Throughout 2012, S.G.T. had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

93.

Throughout 2012, S.G.T. had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

94.

Throughout 2012, S.G.T. had two or more employees who regularly processed credit card transaction involving financial institutions located in states other than the State of Georgia.

95.

Throughout 2012, S.G.T. had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

96.

During 2012, S.G.T. had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

97.

During 2012, S.G.T. had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

98.

During 2012, S.G.T. had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

99.

Throughout 2013, S.G.T. had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

100.

Throughout 2013, S.G.T. had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

101.

Throughout 2013, S.G.T. had two or more employees who regularly processed credit card transactions involving financial institutions located in states other than the State of Georgia.

102.

Throughout 2013, S.G.T. had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business.

103.

During 2013, S.G.T. had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

104.

During 2013, S.G.T. had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

105.

During 2013, S.G.T. had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

106.

Throughout 2014, S.G.T. had two or more employees who regularly participated in the sale and service of food products and alcoholic beverages that were produced and shipped from outside of the State of Georgia.

107.

Throughout 2014, S.G.T. had two or more employees who regularly processed credit card transactions involving customers residing in states other than the State of Georgia.

108.

Throughout 2014, S.G.T. had two or more employees who regularly processed credit card transactions involving financial institutions located in states other than the State of Georgia.

109.

Throughout 2014, S.G.T. had two or more employees who regularly used wires for the interstate transfer of funds in the furtherance of its business

110.

During 2014, S.G.T. had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

111.

During 2014, S.G.T. had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

112.

During 2014, S.G.T. had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

113.

At all times material hereto, S.G.T. has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in FLSA § 3(s)(1), 29 U.S.C. § 203(s)(1).

114.

At all times material hereto, Ms. Hensley was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

115.

At all times material hereto, Ms. Hensley was not employed in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

116.

At all times material hereto, Ms. Hensley was not employed in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

117.

At all times material hereto, Ms. Mitchell was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

118.

At all times material hereto, Ms. Mitchell in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

119.

At all times material hereto, Ms. Mitchell was not employed in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

120.

At all times material hereto, Defendants failed to pay Ms. Hensley wages for work she performed as their employee.

121.

At all times material hereto, Defendants failed to pay Ms. Mitchell wages for work she performed as their employee.

122.

At all times material hereto, Ms. Hensley's sole form of remuneration for the work she performed as Defendants' employee was the receipt of tips from Defendants' customers.

123.

At all times material hereto, Ms. Mitchell's sole form of remuneration for the work she performed as Defendants' employee was the receipt of tips from Defendants' customers.

124.

At all times material hereto, Defendants required Ms. Hensley to pay monies to Defendants in the form of fees each shift and fines for rule infractions.

125.

At all times material hereto, Defendants required Ms. Mitchell to pay monies to Defendants in the form of fees each shift and fines for rule infractions.

126.

At all times material hereto, Defendants required Plaintiffs to pay them certain fees during each shift they worked including bar fees, DJ fees, and House Mom fees.

127.

At all times material hereto, Defendants required Plaintiffs to follow policies and rules they established.

128.

Such rules concerned, *inter alia*, dancer attire, dancer appearance, minimum number of shifts per week, stage rotation scheduling, work attendance, time of departure, consumption of food and beverages, and interactions with customers.

129.

At all times material hereto, Defendants tracked Plaintiffs' attendance manually through the use of sign-in sheets.

130.

At all times material hereto, Defendants prohibited Plaintiffs from leaving the Club premises during any portion of their shifts.

131.

At all times material hereto, Defendants threatened Plaintiffs with disciplinary actions including but not limited to verbal warnings, imposition of fines, suspension, or termination for infractions of Defendants' established policies and rules.

132.

Plaintiffs did not undergo any specialized training or course of study in order to perform as dancers for Defendants.

133.

Defendants financed all advertising and marketing efforts undertaken on behalf of the Club.

134.

Defendants made capital investments in the Club's facilities, maintenance, sound system, lights, food, beverage and inventory.

135.

Defendants made all hiring decisions regarding bar staff, security, entertainers, managerial and all other employees at the Club.

136.

At all times material hereto, Defendants classified Plaintiffs as independent contractors.

137.

At all times material hereto, Plaintiffs were employees of Defendants.

138.

At all times material hereto, Defendants misclassified Plaintiffs as independent contractors.

139.

At all times material hereto, Defendants intentionally and willfully

misclassified Plaintiffs as independent contractors.

140.

At all times material hereto, Defendants have failed to "post and keep posted a

notice explaining the [FLSA] . . . in [a] conspicuous place[]," as required by 29

CFR § 516.4.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE TO MS. HENSLEY

141.

The allegations in all previous paragraphs are incorporated by reference as if

fully set out herein.

142.

As all times material hereto, Defendants misclassified Ms. Hensley as an

independent contractor.

143.

At all times material hereto, Ms. Hensley has been an employee covered by the

FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29

U.S.C. § 206(a).

144.

Defendants failed to inform Ms. Hensley of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

145.

At all times material hereto, Defendants failed to compensate Ms. Hensley at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

146.

At all times material hereto, Defendants willfully failed to compensate Ms. Hensley at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

147.

Ms. Hensley is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

148.

Ms. Hensley is entitled to payment of the money Defendants required them in the form of fees and fines in violation of the "free and clear" requirement of 29 CFR 531.35.

149.

As a result Defendants' requirement that Ms. Hensley pay them fees and fines, Ms. Hensley is entitled to reimbursement of all fees and fines paid to Defendants in addition to all other unpaid wages.

150.

As a result of the willful and intentional nature of Defendants' violations of the FLSA's minimum wage requirements, as alleged above, Ms. Hensley is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

151.

As a result of their nonpayment of wages to Ms. Hensley in violation of the FLSA's minimum wage requirements, as alleged above, Defendants are liable to Ms. Hensley for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

**COUNT II**
**FAILURE TO PAY MINIMUM WAGE AS TO MS. MITCHELL**

152.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

153.

As all times material hereto, Ms. Mitchell was misclassified as an independent contractor.

154.

At all times material hereto, Ms. Mitchell has been an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

155.

Defendants failed to inform Ms. Mitchell of the provisions of FLSA § 3(m); 29 U.S.C. § 203(m).

156.

At all times material hereto, Defendants failed to compensate Ms. Mitchell at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

157.

From in or about August 2013 through May 2014, Defendants willfully failed to compensate Ms. Mitchell at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

158.

Ms. Mitchell is entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

159.

Defendants' requirement that Ms. Mitchell pay them fees and fines violated the "free and clear" requirement of 29 CFR 531.35.

160.

As a result Defendants' requirement that Ms. Mitchell pay them fees and fines, Ms. Mitchell is entitled to reimbursement of all fees and fines paid to Defendants in addition to all other unpaid wages.

161.

As a result of the willful and intentional nature of Defendants' violations of the FLSA's minimum wage requirements, Ms. Mitchell is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

162.

As a result of their nonpayment of wages to Ms. Mitchell in violation of the FLSA's minimum wage requirements, as alleged above, Defendants are liable to Ms. Mitchell for her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT III
## FAILURE TO PAY OVERTIME WAGES AS TO MS. HENSLEY

### 163.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

### 164.

As all times material hereto, Ms. Hensley was an employee covered by the FLSA and entitled to the maximum hours protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

### 165.

At all times material hereto, Ms. Hensley regularly worked for Defendants in excess of forty (40) hours per week.

### 166.

At all times material hereto, Defendants failed to pay Ms. Hensley at one-and-one-half times the minimum wage for work in excess of forty (40) hours in any week.

167.

At all times material hereto, Defendants willfully failed to pay Ms. Hensley at one-and-one-half times the minimum wage for work in excess of forty (40) hours in any week.

168.

Ms. Hensley is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

169.

As a result of the nonpayment of overtime compensation as alleged above, Ms. Hensley is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

170.

As a result of the nonpayment of overtime compensation as alleged above, Ms. Hensley is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT IV
## FAILURE TO PAY OVERTIME WAGES AS TO MS. MITCHELL

171.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

172.

As all times material hereto, Ms. Mitchell was an employee covered by the FLSA and entitled to the maximum hours protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

173.

At all times material hereto, Ms. Mitchell regularly worked in excess of forty (40) hours each week.

174.

At all times material hereto, Defendants failed to pay Ms. Mitchell at one-and-one-half times the minimum wage for work in excess of forty (40) hours in any week.

175.

At all times material hereto, Defendants willfully failed to pay Ms. Mitchell at one-and-one-half times the minimum wage for work in excess of forty (40) hours in any week.

176.

Ms. Mitchell is entitled to payment of overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

177.

As a result of the nonpayment of overtime compensation as alleged above, Ms. Mitchell is entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

178.

As a result of the nonpayment of overtime compensation as alleged above, Ms. Mitchell is entitled to her litigation costs, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs respectfully prays:

1. That Plaintiffs be awarded amounts to be determined at trial against Defendants in due but unpaid minimum wage, plus additional like amounts in liquidated damages and pre- and post-judgment interest thereon;

2. That Plaintiffs be awarded amounts to be determined at trial against Defendants in due but unpaid overtime compensation, plus additional like amounts in liquidated damages and pre- and post-judgment interest thereon;

3.      That Plaintiffs be awarded amounts to be determined at trial against

Defendants jointly and severally for monies Defendants required Plaintiffs

pay to them for fees, fines and tip pools;

4.      That Plaintiffs be awarded their costs of litigation, including their reasonable

attorney's fees from Defendants; and

5.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,


*DELONG CALDWELL BRIDGERS &*
*FITZPATRICK, LLC*

3100 Centennial Tower            */s/ Charles R. Bridgers*
101 Marietta Street              Charles R. Bridgers
Atlanta, Georgia 30303           Ga. Bar No. 080791
(404) 979-3171
(404) 979-3170 (f)               */s/ Kevin D. Fitzpatrick, Jr.*
charlesbridgers@dcbflegal.com    Kevin D. Fitzpatrick, Jr.
kevin.fizpatrick@dcbflegal.com   Ga. Bar No. 262375
matthew.herrington@dcbflegal.com
                                 */s/ Matthew W. Herrington*
                                 Matthew W. Herrington
                                 Ga. Bar No. 275411

                                 **Counsel for Plaintiffs**

37